IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

LOTTIE L. HINKLE,

      Plaintiff,

v.                           CASE NO. 2:10-cv-01122

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for Supplemental Security Income ("SSI"), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Both parties have consented in writing to a decision by the United States Magistrate Judge. Currently pending before the court is Plaintiff's Motion for Summary Judgment.[1]

Plaintiff, Lottie Lynn Hinkle (hereinafter referred to as "Claimant"), protectively filed an application for SSI on June 27,

---

[1] The court reminds Plaintiff that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions in support of judgment on the pleadings or motions for summary judgment. Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision." Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

2007, alleging disability beginning December 1, 1999[2], due to a bad back, a nervous condition, arthritis, Hepatitis C, hands drawn up, leg cramps, stomach problems, severe headaches, carpal tunnel syndrome, lack of concentration, seizures, depression, bipolar disorder, anxiety attacks, arthritis and a learning disability. (Tr. at 224, 268.)   The claim was denied initially and upon reconsideration.  (Tr. at 116-20, 124-26.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 127.) The hearing was held on July 17, 2008, before the Honorable Valerie A. Bawolek.  (Tr. at 27-65.)  By decision dated December 24, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-26.)  The ALJ's decision became the final decision of the Commissioner on August 27, 2010, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-3.)  On September 17, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under  42  U.S.C.  §  423(d)(5)  and  §  1382c(a)(3)(H)(i),  a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the inability "to engage in any substantial  gainful  activity  by  reason  of  any  medically determinable physical or mental impairment which . . . can be

---

[2]  At the hearing, Claimant's counsel amended her onset date to June 10, 2005, the day after the last decision denying benefits (Claimant filed several previous applications, all of which were denied).

expected to last for a continuous period of not less than 12 months
. . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential
evaluation" for the adjudication of disability claims. 20 C.F.R.
§ 416.920 (2008). If an individual is found "not disabled" at any
step, further inquiry is unnecessary. Id. § 416.920(a). The first
inquiry under the sequence is whether a claimant is currently
engaged in substantial gainful employment. Id. § 416.920(b). If
the claimant is not, the second inquiry is whether claimant suffers
from a severe impairment. Id. § 416.920(c). If a severe
impairment is present, the third inquiry is whether such impairment
meets or equals any of the impairments listed in Appendix 1 to
Subpart P of the Administrative Regulations No. 4. Id. §
416.920(d). If it does, the claimant is found disabled and awarded
benefits. Id. If it does not, the fourth inquiry is whether the
claimant's impairments prevent the performance of past relevant
work. Id. § 416.920(e). By satisfying inquiry four, the claimant
establishes a prima facie case of disability. Hall v. Harris, 658
F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the
Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir.
1983), and leads to the fifth and final inquiry: whether the
claimant is able to perform other forms of substantial gainful
activity, considering claimant's remaining physical and mental
capacities and claimant's age, education and prior work experience.

20 C.F.R. § 416.920(f) (2008).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 12.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of major depressive disorder, panic disorder, generalized anxiety disorder, and history of alcohol abuse.[3]  (Tr. at 12.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 22-23.)  The ALJ then found that Claimant has a residual functional capacity for work at all exertional levels, reduced by nonexertional limitations including work involving simple job instructions/tasks, work that does not involve significant public contact and work involving only limited contact with coworkers and supervisors.  (Tr. at 23.)  Claimant has no past relevant work.  (Tr. at 24.)  The ALJ concluded that Claimant could perform jobs such as janitor, hand packer,

---

[3]  At another point in her decision, the ALJ states that Claimant has the severe impairments of alcohol abuse, hepatitis, anxiety, depression and limited intellectual functioning, but also stated that Claimant's Hepatitis C did not result in exertional limitations.  (Tr. at 21-22.)

dishwasher, assembler, laundry worker and kitchen worker, which exist in significant numbers in the national economy. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept
> as sufficient to support a particular
> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v.Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-two years old at the time of the administrative hearing. (Tr. at 24, 29.) Claimant completed the seventh grade. (Tr. at 35.) Claimant has no past relevant work.

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize the medical evidence of record including relevant background information and that evidence dated after her alleged onset of June 10, 2005.

Medical Evidence before alleged Onset

On March 22, 2002, Katie Tharp, M.A. supervised by Larry Legg, M.A., examined Claimant shortly after she was involved in an automobile accident. Ms. Tharp diagnosed major depressive disorder, recurrent, severe without psychotic features and alcohol abuse on Axis I and deferred an Axis II diagnosis. (Tr. at 597.)

On September 12, 2002, testing by Patsy J. Wilkerson, M.A. indicated that Claimant was operating in the borderline to average range of intellectual functioning. (Tr. at 602.)

On November 7, 2002, Safiullah Syed, M.D. examined Claimant at the request of her counsel. He diagnosed major depressive disorder, recurrent, moderate along with panic disorder without agoraphobia and generalized anxiety disorder. (Tr. at 599.)

On November 17, 2004, Claimant tested positive for Hepatitis C. (Tr. at 344.)

6

Medical Evidence after Alleged Onset of June 10, 2005

On July 22, 2005, Lois A. Urick, M.D. conducted a consultative mental examination.  Claimant reported that she used alcohol to help with depression and drank daily until she passed out. Claimant had been charged with two public intoxications and two DUIs.  She reported that she stopped drinking alcohol about a year ago, but still has an occasional beer or two.  (Tr. at 347.)  Dr. Urick diagnosed major depressive disorder, recurrent, moderate and anxiety disorder, not otherwise specified on Axis I and rule out borderline intellectual functioning and rule out personality disorder, not otherwise specified on Axis II.  (Tr. at 347-48.)

On August 6, 2005, Claimant reported to the emergency room following a seizure.  She reported that she "drank some then I went into a seizure." (Tr. at 350.)  Claimant had had 15 to 20 beers in the last 12 to 18 hours.  (Tr. at 350.)  Claimant left without being seen.  (Tr. at 349.)

On September 27, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work.  (Tr. at 356-63.)

On September 28, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that there was insufficient evidence to make a conclusion regarding her mental impairments.  (Tr. at 356-78.)

On May 26, 2006, Mr. Legg conducted a mental consultative

examination at the request of the State disability determination service. Claimant reported past alcohol use, but that she does not "do it much anymore." (Tr. at 383.) Claimant reported that she last consumed a six pack two days ago. (Tr. at 383.) Claimant reported her license was suspended after she failed to pay DUI fines. (Tr. at 384.) Mr. Legg diagnosed alcohol abuse and dysthymic disorder on Axis I and made no Axis II diagnosis. (Tr. at 385.)

On June 3, 2006, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 388-401.)

On June 12, 2006, Miraflor Khorshad, M.D. examined Claimant at the request of the State disability determination service. Dr. Khorshad diagnosed hepatitis by clinical history, severe major depressive disorder and history, alcohol dependency. (Tr. at 404.)

On July 6, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work. (Tr. at 407-14.)

On August 31, 2006, Claimant reported to the emergency room with complaints of a seizure disorder. It was noted that Claimant has a history of alcohol use. (Tr. at 421.) She was diagnosed with an alcohol withdrawal seizure. (Tr. at 422.) A CT scan of the head without contrast showed mild cerebral atrophic changes. (Tr. at 425.)

On September 1, 2006, Claimant reported to the emergency room with complaints of vomiting and dizziness following two seizures. Claimant had not had any alcohol for 48 hours and "she is brought in for withdrawal seizures.  CT scan in emergency room was negative." (Tr. at 417.)

On September 17, 2006, Claimant was diagnosed with alcoholic pancreatitis.  (Tr. at 434-35.)

On March 3, 2007, Claimant reported to the emergency room with complaints of falling and hurting her back following a seizure. Claimant was diagnosed with trauma following her fall, alcoholism, elevated liver function tests and history of Hepatitis C.  (Tr. at 443.)

On May 30, 2007, Claimant underwent sterilization and was diagnosed with suspected endometriosis of the dome of the bladder. (Tr. at 503-04.)

The record includes treatment notes from R. Trenbath, M.D. and others at Camden-on-Gauley Medical Center dated from 2004 through December 14, 2006.  Dr. Trenbath treated Claimant for depression, history of alcohol abuse and Hepatitis C, among other things.  (Tr. at 456-81.)

On July 2, 2007, Claimant reported to the emergency room after an altercation with her boyfriend.  She had an abrasion on her left knuckle and her tailbone was hurting.  Claimant admitted to alcohol use at the time.  (Tr. at 482.)  X-rays of the lungs showed no

acute cardiopulmonary disease.  X-rays of the thoracic spine were normal with hypertrophic degenerative changes in the lower cervical spine.  X-rays of the cervical spine showed degenerative changes in the mid and lower cervical spine.  X-rays of the lumbar spine were normal.  A CT scan of the brain without contrast was normal.  (Tr. at 492-93.)

On July 23, 2007, Paul J. Conley, D.O. examined Claimant for follow up of her Hepatitis C.  Claimant wanted to pursue treatment.  Dr. Conley ordered blood tests.  (Tr. at 494.)

On August 21, 2007, Mr. Legg examined Claimant at the request of the State disability determination service.  Claimant was one and a half hours late for her appointment and smelled of alcohol.  (Tr. at 520.)  Claimant was "generally irritable and uncooperative with both our interview and testing."  (Tr. at 521.)  Claimant reported nine seizures per month with the last one occurring two days ago.  Claimant reported that she takes Klonopin for this condition.  (Tr. at 521.)  Claimant completed the seventh grade and reported that her favorite things to do are "writing and poetry."  (Tr. at 522.)  Claimant was not in special education.  (Tr. at 521.)  Claimant reported she last drank two days ago, but smelled of alcohol at the interview.  (Tr. at 522.)  On the WAIS-III, Claimant attained a verbal IQ score of 62, a performance IQ score of 62 and a full scale IQ score of 59.  Mr. Legg did not consider the scores valid because Claimant did not put forth diligent

10

effort, Claimant smelled of alcohol and she slurred some words. (Tr. at 524.)   Mr. Legg diagnosed alcohol abuse and anxiety disorder, not otherwise specified on Axis I and made no Axis II diagnosis.  (Tr. at 525.)   The diagnosis of anxiety disorder was made based on his interview with Claimant.  She "reports significant symptoms of anxiety and depression, but I am unable to determine whether it is primary or a substance-induced" impairment. (Tr. at 526.)  "She failed also to report enough symptoms to meet the full criteria for any specific anxiety disorder to have been met." (Tr. at 526.)

On August 28, 2007, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe.  (Tr. at 528-41.)   This opinion was affirmed by a second State agency source on December 19, 2007. (Tr. at 558.)

On September 4, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant had no exertional limitations, but could only occasionally climb ramps and stairs, kneel, stoop, crouch and crawl, never climb ladders, ropes or scaffolds or balance, should avoid concentrated exposure to most environmental limitations and avoid even moderate exposure to hazards.  (Tr. at 542-49.)

On September 18, 2007, J. Jackson, D.O. completed a West Virginia Department of Health and Human Resources, General Physical

(Adults).  Claimant had a strong odor of alcohol.  Dr. Jackson diagnosed degenerative joint disease, bipolar disorder, Hepatitis C, seizure disorder and anxiety disorder.  Dr. Jackson opined that Claimant could not perform full time work.  (Tr. at 585-86.)

On December 18, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work, with a frequent ability to climb ramps and stairs and stoop, kneel, crouch and crawl, an occasional ability to climb ladders, ropes and scaffolds, a need to avoid concentrated exposure to extreme heat and cold and a need to avoid even moderate exposure to hazards.  (Tr. at 550-57.)

On May 28, 2008, Cynthia I. Hagan, M.A., a supervised psychologist, examined Claimant at the request of Claimant's counsel.  Claimant did not report her substance abuse, loss of her license due to DUI or past public intoxication convictions.  (Tr. at 561.)  On the WAIS-III, Claimant attained a verbal IQ score of 72, a performance IQ score of 72 and a full scale IQ score of 69. Ms. Hagan stated that if tested repeatedly, Claimant's true score would fall somewhere between the mild mental retardation range and the borderline range.  Ms. Hagan opined that the results were valid.  (Tr. at 562.)  Ms. Hagan diagnosed depressive disorder, not otherwise specified and panic disorder with agoraphobia on Axis I and mild mental retardation on Axis II.  She rated Claimant's GAF

at 55.[4]  (Tr. at 565.)

Ms. Hagan completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which she rated Claimant's abilities as fair to poor in all categories.  (Tr. at 567-70.)

On July 8, 2008, Claimant underwent an MRI of the brain with and without gadolinium, and it was essentially unremarkable.  (Tr. at 582.)

An EEG on June 30, 2008, was normal.  (Tr. at 583.)

The record includes a therapy progress note from Ms. Hagan dated July 1, 2008.  Claimant discussed her anxiety and depression. Claimant's affect was appropriate.  Psychomotor activity was above average.  (Tr. at 587.)

The record includes treatment notes from Camden-on-Gauley Medical Center dated June 25, 2008, July 9, 2008, and November 11, 2008.  On June 25, 2008, Claimant reported to Dr. Trenbath that she was having seizures.  She believed that the Klonopin was an antiseizure medication, but in fact, Dr. Trenbath indicated it was for treatment of her anxiety.  Claimant reported worsening of her headaches, but reported that Tylenol helps them.  Claimant's reflexes were symmetrical, and sensation was normal.  Dr. Trenbath recommended an EEG and an MRI.  (Tr. at 590.)

---

[4]  A GAF rating between 51 and 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers).  American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. (Text Revision) 2000).

On July 9, 2008, Dr. Trenbath noted that Claimant most likely was having seizures. He noted that Claimant's MRI and EEG were normal. Romberg was normal. There was no problem with coordination. He diagnosed probable seizures and referred Claimant to Dr. Navada. He prescribed Phenytek in the meantime. (Tr. at 592.) On November 11, 2008, a telephone note indicates that Claimant's medical card would not pay for the seizure medication. (Tr. at 593.)

On July 18, 2008, Shiv Uchila Navada, M.D. examined Claimant at the request of Dr. Trenbath regarding her seizures. The neurological examination was normal. (Tr. at 608.) Dr. Navada noted that Claimant's awake EEG was normal, as was the cranial MRI. His impression was seizures, probable alcoholism, marginally elevated blood pressure and history of Hepatitis C. He prescribed Keppra. (Tr. at 609.)

At the administrative hearing, Robert Marshall, M.D. testified that Claimant's primary problem was alcoholism. (Tr. at 42.) Dr. Marshall opined that Claimant had no physical limitations. (Tr. at 47.) Gary Bennett, Ph.D. testified that it was difficult to determine Claimant's true level of mental limitation given her abuse of alcohol. (Tr. at 56.) Dr. Bennett testified that sometimes people stop drinking and the anxiety and depression go away, and sometimes people are drinking excessively because of those conditions. (Tr. at 56.) Nevertheless, Dr. Bennett opined

14

that it would be appropriate to limit Claimant to work not involving public contact, limited coworker/supervisor contact and simple tasks.  (Tr. at 58.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in evaluating the combined effect of all of Claimant's impairments; (2) the ALJ erred in not determining the relationship between Claimant's alcohol use and her other problems in finding Claimant was not disabled; (3) the ALJ's residual functional capacity finding is not supported by substantial evidence; (4) the ALJ erred in her pain and credibility analysis; and (5) the ALJ erred in failing to afford sufficient weight to the opinion of Cynthia Hagan, M.A.  (Pl.'s Br. at 5-8.)

The Commissioner argues that (1) Claimant has failed to show that she is disabled under the Social Security Act; (2) Claimant does not meet or equal any listed impairment; (3) the ALJ properly evaluated the opinion of Ms. Hagan; (4) Claimant's subjective complaints of pain were not fully credible; (5) substantial evidence supports the ALJ's residual functional capacity assessment; and (6) the Commissioner satisfied his burden at step five of the sequential analysis.  (Def.'s Br. at 10-20.)

Claimant first argues that the ALJ erred in failing to properly evaluate the combined effect of all of Claimant's

15

impairments and in not determining the relationship between
Claimant's alcohol use and her other problems in finding Claimant
not disabled.   In a related vein, Claimant argues that the ALJ
erred in failing to consider the effect of Claimant's carpal tunnel
syndrome, her neck and back pain and her Hepatitis C.   (Pl.'s Br.
at 6.)

        The social security regulations provide that

> [i]n determining whether your physical or
> mental impairment or impairments are of a
> sufficient medical severity that such
> impairment or impairments could be the basis
> of eligibility under the law, we will consider
> the combined effect of all of your impairments
> without regard to whether any such impairment,
> if considered separately, would be of
> sufficient severity.

20 C.F.R. § 416.923 (2008).   Where there is a combination of
impairments, the issue "is not only the existence of the problems,
but also the degree of their severity, and whether, together, they
impaired the claimant's ability to engage in substantial gainful
activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974).
The ailments should not be fractionalized and considered in
isolation, but considered in combination to determine the impact on
the ability of the claimant to engage in substantial gainful
activity.   Id.   The cumulative or synergistic effect that the
various impairments have on claimant's ability to work must be
analyzed.   DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).
        The ALJ's decision reflects a careful consideration of

Claimant's impairments, both alone and in combination throughout her decision and at the administrative hearing when questioning the vocational expert. Contrary to Claimant's assertions, the ALJ does consider the relationship between Claimant's alcohol use and her other problems in finding her not disabled.

In evaluating Claimant's impairments at the third step of the sequential analysis, the ALJ observed that Claimant

> has not engaged in regular counseling and she has not had a prolonged period of abstinence and sobriety; therefore, the evidence of record could support a conclusion that, if the claimant abstained from alcohol, she would not have a severe mental impairment; nevertheless, the ALJ has considered the evidence of record and concluded that the claimant's combination of mental impairments (alcohol abuse, anxiety, depression, and limited intellectual functioning) constitutes a severe (but not listing level) mental impairment because they have produced no more than mild limitations of her activities of daily living; produced no episodes of decompensation of extended duration; and produced moderate limitations of social functioning, concentration persistence and pace. These deficits of social functioning, concentration, persistence and pace have resulted in restrictions to work that [involve] simple tasks, limited interaction with co-workers and supervisors, and no public contact.

(Tr. at 23.)

Under the Social Security Act, "[a]n individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The Amendment and the social security regulations set up a two-step analysis for determining this issue. Briefly, the ALJ first must determine whether the claimant is disabled. See

20 C.F.R. § 416.935(a) (2008).  If the ALJ does conclude that the claimant is disabled, he or she must then ask whether alcoholism or drug addiction is a contributing factor material to claimant's disability.  Id.  Alcoholism or drug addiction is a contributing factor material to claimant's disability if the claimant would not be disabled if he or she stopped using alcohol or drugs.  See 20 C.F.R. § 416.935(b)(1) (2009).

An August 30, 1996, memorandum to various departments within the Social Security Administration ("SSA") stated that SSA policy mandates a finding of not material where "it is not possible to separate the mental restrictions and limitations imposed by [drug or alcohol abuse] and the various other mental disorders shown by the evidence ...."  Cox, Dale, Social Security Administration, Emergency Teletype, August 30, 1996, Response to Question Number 29 (found at www.ssas.com under Links, Emergency Messages, EM-96200).

The ALJ never determined that Claimant was disabled, even considering her alcoholism.  However, she did suggest that if Claimant stopped drinking alcohol, she would not have severe mental impairments.  Because the medical expert testified that it was difficult to determine whether alcohol abuse caused Claimant's mental impairments or visa versa, the ALJ found severe mental impairments and resulting limitations.  The ALJ's findings are supported by substantial evidence of record from the medical experts who testified at trial, Mr. Legg and others.

18

Turning to the Claimant's argument that the ALJ did not properly consider Claimant's Hepatitis C, her neck and back pain and carpal tunnel syndrome in combination with her other impairments, the court disagrees. The ALJ acknowledged Claimant's complaints regarding carpal tunnel syndrome, neck and back pain and Hepatitis C (Tr. at 14, 16), but concluded based on the evidence of record, including the testimony of Dr. Marshall, that Claimant's carpal tunnel syndrome and neck and back pain were not severe. (Tr. at 22). In addition, the ALJ found no exertional limitations resulting from Claimant's Hepatitis C. These findings are supported by substantial evidence. There is barely a mention of carpal tunnel syndrome in the record. Claimant had only minor objective evidence of neck pain and no more than conservative treatment for her back and neck pain. Her Hepatitis C did not result in significant limitations. The ALJ did not err in considering the combined effect of Claimant's alleged physical impairments.

Next, Claimant argues that the ALJ failed to make findings about Claimant's pain in her neck and back. Claimant asserts that the ALJ failed to find an objective basis for Claimant's pain and failed to make findings about the severity and persistence of the pain testified to by Claimant. (Pl.'s Br. at 6.)

As the ALJ noted in her decision, Claimant testified that she had neck and back pain that limited her ability to turn her head.

(Tr. at 14.)   However, the ALJ found this impairment to be nonsevere because Claimant

> has not complained of chronic neck or back pain.  She has not had regular treatment for neck or back pain.  She has not had physical therapy, injection, therapy or surgery. She has not used extensive pain medications.  She does not have significant signs or findings of physical impairment (other than alcohol related fine tremor).  The July 18, 2008 neurological evaluation was thorough and it reported no signs of spinal impairment, radiculopathy, loss of strength or loss of sensation (Exhibit C41F). Based on the record as a whole and giving great weight to the report of the July 2008 neurological evaluation (Exhibit C41F), the assessment of Dr. Withrow (Exhibit C20F), and the testimony of the medical expert, the undersigned has concluded that the claimant's degenerative disc disease is not a severe impairment ....

(Tr. at 22.)

The ALJ's findings above comply with Social Security Ruling ("SSR") 96-3p, which directs that

> [b]ecause a determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom- related limitations and restrictions must be considered at [the second] step of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms. If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

SSR 96-3p, 1996 WL 362204, *34470-71 (July 2, 1996).

The ALJ's finding that Claimant's neck and back impairment and resulting pain was not a severe impairment resulting in limitation is supporting by substantial evidence and in keeping with SSR 96-

20

3p.  The ALJ adequately considered Claimant's subjective complaints at step two of the sequential analysis.

Finally, Claimant states that the ALJ found no limitations in her mental abilities other than the ability to perform routine repetitive tasks.  She complains that the ALJ erred in affording more weight to the opinion of Mr. Legg than to that of Ms. Hagan. Claimant reasons that Ms. Hagan saw Claimant more than once and conducted the most recent treatment and evaluation, while Mr. Legg saw Claimant several years apart and his last testing was considered invalid.  (Pl.'s Br. at 7.)  Finally, Claimant argues that the treatment records of Dr. Trenbath indicated that Claimant's pain and psychological problems would impose a level of nonexertional impairments which could substantially preclude employment activity as shown by Ms. Hagan's evaluation.  (Pl.'s Br. at 8.)

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. § 416.927(d) (2008).  These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. § 416.927(d)(2).

21

Under § 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Section 416.927(d)(2)(i) states that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In making a finding at step three of the sequential analysis, the ALJ found that

> [i]f the psychological evaluation and assessment that her representative purchased from Ms. Hagan (Exhibit 23F) were accorded controlling weight, they could be the basis of a favorable decision under listing 12.05 (or possibly 12.02); however, the record does not fully support Ms. Hagan's assessments. Reports from Mr. Legg reached different conclusions regarding the claimant's intellectual functioning and mental impairments. The claimant's treating sources have not observed and reported evidence of mental retardation and the claimant's life achievements do not suggest that she is mentally retarded. Furthermore, the medical experts at the hearing did not opine that the claimant was mentally challenged or had listing level mental ... impairments.

22

(Tr. at 22.)

Later in her decision, the ALJ rejected the assessment of Ms. Hagan for the following reasons:

> [w]hen she provided the assessment, Ms. Hagan was an examining source who had seen the claimant on referral from her disability advocate; therefore, her opinions and observations were entitled to no greater weight than the opinions of Mr. Legg, a psychologist who had seen the claimant o[n] several occasions (but had not treated her) on referral from the DDS. The greater weight of the evidence, including Mr. Legg's assessments, the DDS assessments, the prior ALJ assessments, and the testimony of the medical experts supports the current residual functional capacity assessment over the assessment of Ms. Hagan.

(Tr. at 23.)

Claimant does not seriously challenge the ALJ's finding that Claimant does not meet or equal Listing 12.05C, and the court finds the ALJ's determination in that regard is supported by substantial evidence. Even assuming Ms. Hagan's IQ testing was valid, Claimant did not have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (2008); see also § 12.00A (stating that for Listing 12.05, claimants must satisfy the diagnostic description in the introductory paragraph and any one of the four sets of criteria). The ALJ's findings above acknowledge as much, and they are supported by substantial evidence.

Regarding the weight afforded Ms. Hagan's findings on the assessment, the ALJ properly weighed the evidence of record related to Claimant's mental impairments and did not err in affording more weight to the opinion of Mr. Legg.    Contrary to Claimant's assertions, the ALJ found that Claimant was limited not only to routine repetitive tasks (actually simple job instructions/tasks), but that she also could not perform work involving significant public contact and that she could only perform work involving limited contact with coworkers and supervisors.    (Tr. at 23.) These limitations are consistent with and supported by substantial evidence of record from Mr. Legg, Dr. Bennett and others.   As the ALJ points out in his decision, a one-time visit to Ms. Hagan after she completed her assessment does not establish the kind of longitudinal relationship after-the-fact that would justify affording her opinion on the assessment more weight.   Ms. Hagan had no more added perspective about Claimant's mental impairments than Mr. Legg, who had actually conducted three consultative examinations and, unlike Ms. Hagan, was a licensed psychologist. Furthermore, as the medical expert, Dr. Bennett, testified at the administrative hearing, it is "a little puzzling" that Ms. Hagan never mentions alcohol abuse in her report and assessment when the evidence of record is replete with instances of alcohol abuse.   In short, the ALJ properly weighed the evidence of record related to Claimant's mental condition, and her findings are supported by

substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Summary Judgment is DENIED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: July 22, 2011

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge